**RECORD NO. 13-4192**

In The

# United States Court Of Appeals
## For The Fourth Circuit

## UNITED STATES OF AMERICA,

*Plaintiff – Appellee,*

v.

## YASTRZEMSKI LIPSCOMBE, a/k/a O,

*Defendant – Appellant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
AT ANDERSON**

_____

**BRIEF OF APPELANT**

_____

**T. Micah Leddy
THE LEDDY LAW FIRM, LLC
2008 Lincoln Street
Columbia, SC 29201
(803) 779-9966**

*Counsel for Appellant*

# TABLE OF CONTENTS

**PAGE:**

TABLE OF AUTHORITIES ................................................................ ii

NATURE OF THE APPEAL ...............................................................1

STATEMENT OF JURISDICTION.........................................................1

STATEMENT OF THE ISSUE ..............................................................1

STATEMENT OF THE CASE................................................................1

STATEMENT OF THE FACTS .............................................................3

SUMMARY OF ARGUMENT ..............................................................6

ARGUMENT .......................................................................................7

    I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN PRECLUDING THE DEFENSE FROM CROSS-EXAMINING COOPERATING CO-DEFENDANT'S ON THE SPECIFIC DETAILS OF THE MANDATORY MINIMUM SENTENCES THEY CONTRACTED WITH THE GOVERNMENT TO AVOID.............................................7

        A.    STANDARD OF REVIEW .......................................7

        B.    DISCUSSION .........................................................7

CONCLUSION ...................................................................................17

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

PAGE(S):

## CASES:

Chavis v. North Carolina,
    637 F.2d 213 (4th Cir. 1980) ............................................................7

Davis v. Alaska,
    415 U.S. 308, 94 S .Ct. 1105, 39 L. Ed. 2d 347 (1974) ..................7

Hoover v. Maryland,
    714 F.2d 301 (4th Cir. 1983) ....................................................passim

State v. Ambers,
    85 F.3d 173 (4th Cir. 1996) ............................................................11

State v. Gracely,
    399 S.C. 363 (S.C. 2012),............................................8, 14, 15, 16

United States v. Ambers,
    85 F.3d 173 (4th Cir. 1996) ............................................................7

United States v. Cannon,
    2012 WL 6568410 (D.S.C. 2012)...........................................15, 16

United States v. Cropp,
    127 F.3d 354 (4th Cir. 1997) ...................................................passim

United States v. Dimora,
    843 F. Supp. 2d 799 (N.D. Ohio 2012) ...................................15, 16

United States v. Houghton,
    554 F.2d 1219 (1st Cir. 1977),
    cert. denied, 434 U.S. 851, 98 S. Ct. 164,
    54 L. Ed. 2d 120 (1977)..................................................................8

United States v. Thomas,
   895 F.2d 1198 (8th Cir. 1990) ....................................................................11

United States v. Tracey,
   675 F.2d 433 (1st Cir. 1982) .........................................................................8

**STATUTES:**

18 U.S.C. § 922(g)(1)......................................................................................3

18 U.S.C. § 924(a)(2) ......................................................................................3

18 U.S.C. § 924(e)............................................................................................3

18 U.S.C. § 3231 ..............................................................................................1

18 U.S.C. § 3742 ..............................................................................................1

21 U.S.C. § 841(a)(1).....................................................................................1, 3

21 U.S.C. § 841(b)(1)........................................................................................1

21 U.S.C. § 841(b)(1)(A)...................................................................................3

21 U.S.C. § 846 .................................................................................................3

21 U.S.C. § 851 .................................................................................................2

28 U.S.C. § 1291 ...............................................................................................1

**CONSTITUTIONAL PROVISION:**

U.S. Const. Amend VI ...............................................................................passim

## NATURE OF THE APPEAL

Appellant is submitting this brief to challenge the District Court's ruling limiting the scope of cross-examination of cooperating co-defendants to exclude any mention of the specific mandatory minimum sentences that they had contracted with the Government to avoid through their cooperation. There appears to be a conflicting standard set forth within the Fourth Circuit on whether or not such a limitation is an abuse of the trial judge's discretion in limiting the scope of cross-examination.

## STATEMENT OF JURISDICTION

Jurisdiction is vested in the United States District Court for the District of South Carolina pursuant to 18 U.S.C. § 3231. Jurisdiction of the Court of Appeals is founded upon 18 U.S.C. § 3742 and 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

Whether the District Court erred in limiting the scope of cross-examination of alleged co-conspirators to exclude any mention of mandatory minimum sentences they were facing.

## STATEMENT OF THE CASE

Yastrzemski Lipscombe was a defendant in a drug distribution conspiracy case involving several alleged co-conspirators. The Third Superseding Indictment alleged that Mr. Lipscombe had violated 21 U.S.C. §§ 841(a)(1), 841(b)(1) and

851, and Mr. Lipscombe was found guilty following a jury trial on October 2, 2012. J.A. Vol I p. 1.

Mr. Lipscombe, a truck driver by trade, was alleged to have engaged in a conspiracy to transport large quantities of marijuana from Texas to South Carolina in tractor-trailers over a number of years.

Mr. Lipscombe's co-defendants were Demekia Martin, Edward Leavitt, Furman Jones, Jr., Larry Gory, and Anthony Yanez. Mr. Lipscombe's co-defendants all entered guilty pleas and Martin, Gory, and Yanez testified against Mr. Lipscombe at his trial.

Jones and Leavitt were sentenced on October 17, 2012, which was just about two weeks after Appellant's trial. Mr. Jones received a sentence of 30 months incarceration followed by 5 years of supervised release. Mr. Leavitt received a sentence of 131 months incarceration followed by 5 years of supervised release. J.A. Vol II p. 563.

Mr. Lipscombe was sentenced along with his remaining co-defendants on February 19, 2013. Demekia Martin, the owner of the truck used to transport drugs, was sentenced to 80 months in prison followed by 5 years of supervised release. Larry Gory was sentenced to 40 months in prison followed by 3 years of supervised release. Anthony Yanez, the supplier of the marijuana in Texas, was sentenced to 90 months in prison followed by 5 years of supervised release. The

Appellant, Mr. Lipscombe, received the harshest sentence at 151 months in prison followed by 8 years of supervised release.  J.A. Vol I p. 554.

Mr. Lipscombe filed a notice of appeal prematurely on February 22, 2013, so this Court entered an order that the notice of appeal would be construed as filed when the District Court's order of Judgment was filed.  The order of Judgment was filed on March 5, 2013 and the appeal case began.  Counsel was appointed on May 22, 2013.  J.A. Vol I p. 13.

## STATEMENT OF THE FACTS

All of the Defendants in this case were charged in Count 1 of the Second Superseding Indictment, which was returned by the Grand Jury on April 10, 2012, and charged the defendants with conspiring to possess with the intent to distribute 5 kilograms or more of cocaine and 1,000 kilograms or more of marijuana in violation of Title 21, United States Code, Sections 841(a)(1), and (b)(1)(A); all in violation of Title 21, United States Code, Section 846.  Larry Gory was the lone defendant charged in Count 2 of the indictment, which charged that Mr. Gory, having been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed a firearm and ammunition; all in violation of Title 18, United States Code, Sections 922(g)(1), 924(a)(2) and 924(e).

The events leading up to the indictments in this case were investigated by Greenville, SC office of the United States Drug Enforcement Administration

("DEA") as well as the South Carolina Law Enforcement Division ("SLED"), the Spartanburg Department of Public Safety, and the DEA office in McAllen, Texas. A very detailed accounting of the facts as presented by the Government are set forth in pages 568-585 of Volume II of the Joint Appendix and incorporated herein by reference.

The essential facts that were alleged are as follows: Demekia Martin, who himself did not have a Commercial Driver's License, owned a trucking company that engaged in legitimate shipping but also was used to smuggle large quantities of marijuana. Martin testified that this activity began in the early 2000s and continued until the date of his arrest. J.A. Vol I at 263. One of Mr. Martin's trucks, a 2000 white Freightliner, was the subject of several encounters with law enforcement. On May 5, 2008, Mr. Lipscombe was driving this truck when he was stopped in Texas by a State Trooper. Following a consensual search of the truck, the Trooper discovered approximately 150 pounds of marijuana. J.A. Vol II at 587. Lipscombe was arrested and pled guilty on January 20, 2010 to a state level charge for felony possession of marijuana and was placed on probation for 5 years. J.A. Vol I at 586. Shortly after being placed on probation, in June of 2010, Lipscombe and Martin were traveling west in the same Freightliner truck when they were stopped in Mississippi. A consensual search of the truck yielded $49,700.00 in cash, which was seized by police. Neither Martin nor Lipscombe

were arrested at this stop, but testimony about this incident was used to prove the ongoing conspiracy.  J.A. Vol I at 286-87.

After this stop, law enforcement, utilizing an undercover agent and other confidential sources, were advised of a large shipment that would be picked up in Texas in the same Freightliner truck on July 24, 2010.  This shipment was stopped shortly after it departed in Texas, and approximately 2,740 pounds of marijuana were seized.  J.A. Vol I at 305.

In January 2012 all of these defendants were arrested by law enforcement and charged in this case with conspiracy to distribute narcotics.  All of the defendants except for Lipscombe would eventually enter into a cooperation agreement with the Government and pled guilty.  Martin, Gory, and Yanez would testify against Lipscombe at his trial.

On May 30, 2012, the Government filed a motion in limine to exclude any reference to possible penalties faced by the cooperating co-defendants.  J.A. Vol I at 84A.  The District Court heard arguments on this issue on August 22, 2012.  J.A. Vol I at 94.  The District Court granted the motion to exclude mention of specific mandatory minimum sentences, and on September 4, 2012 the Defendant filed a motion to reconsider this issue in light of conflicting law in the Fourth Circuit, a jurisdictional split on the issue in other Federal Circuits, and a recent ruling by the South Carolina Supreme Court.  J.A. Vol I at 128.

# SUMMARY OF ARGUMENT

Appellant argues that the District Court ruling that precluded him from cross examining his co-defendants on the mandatory minimum sentence they sought to avoid through their cooperation was a violation of his rights under the Confrontation Clause of the Sixth Amendment to the Constitution of the United States because it unreasonably interfered with his ability to show how biased each of those witnesses were against him and just how much they stood to gain from their testimony. The District Court rested its ruling in part on the idea that, because no sentence had been agreed to by the Court, to allow such cross examination would impinge on the province of the Court to set sentence, which is a rationale specifically rejected by United States v. Cropp, 127 F.3d 354 (4th Cir. 1997), the very case relied upon by the Government in its motion in limine. The remaining rationale espoused in Cropp and argued by the Government, which is that the jurors' knowledge of how much time such charges carry would engender so much sympathy for a defendant that they would engage in jury nullification, is without rational merit and must be rejected as an abridgement of the Appellants' right to confront adverse witnesses by bringing out the concrete details of the agreement they made with the Government. Hoover v. State of Maryland, 714 F.2d 301 (4th Cir. 1983).

## ARGUMENT

**I.    THE DISTRICT COURT ABUSED ITS DISCRETION IN PRECLUDING THE DEFENSE FROM CROSS-EXAMINING COOPERATING CO-DEFENDANT'S ON THE SPECIFIC DETAILS OF THE MANDATORY MINIMUM SENTENCES THEY CONTRACTED WITH THE GOVERNMENT TO AVOID.**

### A.    STANDARD OF REVIEW

This Court reviews the District Court's decision to limit cross-examination for an abuse of discretion.  <u>United States v. Ambers</u>, 85 F.3d 173, 175 (4th Cir. 1996).

### B.    DISCUSSION

This Court has previously enunciated a view contrary to the position espoused by the Government and adopted by the District Court in this case.  In <u>Hoover v. State of Maryland</u>, this Court stated:

> The constitutional right of confrontation guaranteed to a state criminal defendant by the fourteenth amendment has as one of its most important aspects the right to cross-examine a hostile witness in order to undermine the credibility of the witness by highlighting the possible influence of bias on the testimony of the witness. *See Davis v. Alaska,* 415 U.S. 308, 94 S .Ct. 1105, 39 L. Ed. 2d 347 (1974). The trial judge may limit such cross-examination only to preserve the witness' constitutional immunity from self-incrimination, to prevent attempts to harass, humiliate or annoy him, *id.* at 320, 94 S. Ct. at 1112, or where the information sought might endanger the witness' personal safety. *Chavis v. North Carolina,* 637 F.2d 213, 226 (4th Cir. 1980). When such factors are not present, substantial limitations on the attempts of a defendant to undermine as biased a witness' testimony constitute constitutional error.

7

> The trial judge's traditional discretion to control the limits of cross-examination cannot be exercised until "the constitutionally required threshold level of inquiry has been afforded the defendant." *United States v. Tracey,* 675 F.2d 433, 437 (1st Cir. 1982). Moreover, any exercise of discretion once that threshold is reached must be informed by "the utmost caution and solicitude for the defendant's Sixth Amendment rights." *United States v. Houghton,* 554 F.2d 1219, 1225 (1st Cir. 1977), *cert. denied,* 434 U.S. 851, 98 S. Ct. 164, 54 L. Ed. 2d 120 (1977). "Especially where the witness is an accomplice of the defendant or may have some other substantial reason to cooperate with the government, the defendant should be permitted wide latitude in the search for the witness' bias." *Tracey,* 675 F.2d at 438.

Hoover v. State of Md., 714 F.2d 301, 305 (4th Cir. 1983).

In this case, the Government filed a motion in limine to prevent any cross examination of cooperating co-defendants on the issue of what mandatory minimum prison sentences they had contracted with the Government to avoid. J.A. Vol I at 84A. In a pre-trial hearing, the District Court heard argument on this issue and ruled in favor of the Government. J.A. Vol I p. 126. Initially, counsel for the Appellant indicated that he did not contest the Government's motion and had no intention of attempting to cross-examine the cooperating co-defendants on the specific penalties they sought to avoid through cooperating. J.A. Vol I p. 126. About a week after this hearing, however, the South Carolina Supreme Court issued its opinion on this issue in State v. Gracely, 399 S.C. 363 (S.C. 2012), which prompted counsel for Lipscombe to file a motion to reconsider this issue on September 4, 2012. The motion requested that the District Court permit the defense to cross-examine the cooperators on the specific sentences they sought to

avoid.  J.A. Vol I p. 123A.  The District Court heard argument on this motion on September 13, 2012.  J.A. Vol I. p. 131 et seq.

The co-defendants in this case all faced mandatory minimum sentences of at least 10 years, and one co-defendant faced mandatory life.  J.A. Vol I p. 131.  The plea agreements that they entered into with the Government provided that, in exchange for substantial assistance, the Government would either request a downward departure or move that the District Court remove the enhancement provision that provided for a mandatory minimum sentence, whichever the co-defendant preferred.  J.A. Vol I p. 132.  When asked exactly what he wanted to posit to the co-defendants on cross, counsel for Lipscombe responded, "**I would like to ask them about the mandatory minimum that they are facing** and what their subjective feelings are about providing substantial assistance to the Government through their plea agreements and what they hope to gain from them." J.A. Vol I. p. 133 (emphasis added).  The District Court responded, "Well, the case law in this circuit is you don't go into specific sentences.  I don't mind allowing you to ask questions that you are facing certain mandatory minimums, without saying what they are, and saying that you're hoping to get a sentence as low as you can or below that without going into detail.  **Because I have no idea, I haven't even seen a Presentence Report, I've not agreed to anything**.  And the Government only has agreed to make a recommendation or make a motion

provided they receive truthful, full disclosure. And the Government won't know that until it's done. So we can't get into too much speculation. J.A. Vol I pp. 133-34.

The rationale applied by the District Court is contrary to <u>United States v. Cropp</u>, 127 F.3d 354, 358 (4th Cir. 1997), which is the very case relied upon by the Government in its motion in limine.

In <u>Cropp</u>, the trial judge "ruled that the defense could not ask about the specific penalties that the cooperators would have received absent cooperation, or about the specific penalties they hoped to receive due to their cooperation." <u>Cropp</u>, 127 F.3d at 358. "The District Court suggested that asking witnesses about the sentences they expected to receive would impinge upon the court's discretion to ultimately decide those sentences." In rejecting this basis for excluding the questions from cross-examination, the Fourth Circuit held, "[i]n the instance case, we do not credit the district court's first ground for not allowing the questioning, namely that to do so would impinge upon his discretion. As the appellants made clear in their brief and at trial, they did not intend to explore the actual sentences that the witnesses would receive, as that remained in the sole discretion of the sentencing judge. Rather, the defense sought to inquire about what the witnesses *believed* their sentences would have been and what they hoped to receive by virtue of their cooperation. We agree that the witness' expectations, rather than the actual

sentence eventually given, were the potential sources of their possible bias."
<u>Cropp</u>, 127 F.3d at 358 (emphasis original)(citing <u>Hoover v. Maryland</u>, 714 F.2d 301, 305 (4th Cir. 1983); <u>State v. Ambers</u>, 85 F.3d 173, 175 (4th Cir. 1996). Therefore, the District Court clearly applied the wrong rule to this issue, basing the exclusion on the very rationale that has been rejected by this Court. <u>Id.</u>

The District Court in this case further justified the ruling to exclude mention of the mandatory minimum sentences by stating, "[i]t's obvious and it's a good argument that each co-defendant's just lying because he wants to get a lesser sentence. And sometimes that may happen, I don't know. But it's important. And as the Fourth Circuit case said, not to get into actual statutory sentences or actually what the mandatory minimums are because juries just don't understand that. And it's not – and it's just basic law that juries are not concerned with sentences. They're not supposed to be concerned with the length of sentences." J.A. Vol I p. 136. This rationale, like the motion filed by the Government, conflates the issue of the defendant's punishment, which is not relevant to the jury, with the defendant's right to expose a witness's incentive to lie through cross-examination, a right that is held sacrosanct by the Sixth Amendment. <u>Compare</u> <u>United States v. Thomas</u>, 895 F.2d 1198, 1200 (8th Cir. 1990)(cited by the Government in its motion in limine) <u>with</u> <u>Hoover v. Maryland</u>, 714 F.2d 301 (4th Cir. 1983)(reversing

11

conviction when defense precluded from examining penal benefits from witness' cooperation).

Ultimately, this Court in <u>Cropp</u> upheld the second rationale espoused by the trial judge, that the fear that a jury would infer the defendant's possible punishment by hearing about the mandatory minimums faced by the co-defendants, would lead them to feel so much sympathy for the defendant that they would engage in jury nullification.  <u>Cropp</u>, 127 F.3d at 358.

As this Court held in <u>Hoover</u>, many years before it issued a seemingly contrary opinion in <u>Cropp</u>, it is absolutely essential for the trier of fact to be made aware of the reason and degree of a witness' incentive to lie against a defendant in order to benefit themselves.  This Court used much more emphatic language in <u>Hoover</u> than in <u>Cropp</u> when laying out the extent to which a trial court may limit a defendant's right to confrontation through the crucible of cross-examination – "The trial judge may limit such cross-examination only to preserve the witness' constitutional immunity from self-incrimination, to prevent attempts to harass, humiliate or annoy him, or where the information sought might endanger the witness' personal safety.  When such factors are not present, substantial limitations on the attempts of a defendant to undermine as biased a witness' testimony constitute constitutional error.  The trial judge's traditional discretion to control the limits of cross-examination cannot be exercised until the constitutionally required

threshold level of inquiry has been afforded the defendant. Moreover, any exercise of discretion once that threshold is reached must be informed by the utmost caution and solicitude for the defendant's Sixth Amendment rights. Especially where the witness is an accomplice of the defendant or may have some other substantial reason to cooperate with the government, the defendant should be permitted wide latitude in the search for the witness' bias." Hoover, 714 F.2d at 305 (internal quotations and citations omitted).

Somewhere between Hoover, Cropp, and this case, the values espoused by this Court in Hoover have been lost. In place of using the "utmost caution and solicitude" in determining whether to allow the defendant to pointedly ask a witness whether he expects to avoid a mandatory term of imprisonment of 10 years, or even life, the practice has become one of hobbling the effectiveness of cross-examination to avoid jury nullification where there is no evidence that such a practice would take hold. It is simply not reasonable to think that an average juror would be so upset by finding out that a person they believe beyond a reasonable doubt peddled poisons to addicts is bound to be incarcerated for 10 years that they would dishonor their vow as a juror and feel compelled to ignore the law. What is far more reasonable is what this Court said in Hoover, which is that "[t]he likelihood that a prosecution witness is shading or even contriving testimony adverse to the defendant reasonably can be viewed as directly correlated with the

perceived value of such testimony to the witness." <u>Hoover</u>, 714 F.2d at 305. In attacking the credibility of such a witness, it is imperative that the defendant be allowed to expose the value of the witness' cooperation, and the value of such cooperation is measured in years, not in words such as "severe penalties," which can mean any number of things to different people.

In the <u>State v. Gracely</u>, the South Carolina Supreme Court case that led Lipscombe to challenge this ruling, the defendant was precluded from cross-examining cooperating co-defendants about mandatory minimum sentences that they were able to avoid by testifying against him. <u>State v. Gracely</u>, 399 S.C. 363, 374 (S.C. 2012). Like this case, the trial judge in <u>Gracely</u> allowed a lot of cross examination about the generic benefit attained by the witnesses through cooperation, but the South Carolina Supreme Court concluded that disallowing any mention of mandatory minimum sentences violated the defendant's rights under the Sixth Amendment. By excluding the fact that these witnesses avoided twenty-five year mandatory minimum sentences, and instead only allowing inquiry into a very basic notion of receiving a benefit, the inquiry failed to achieve the "requisite degree of granularity" guaranteed by the Sixth Amendment. <u>Id.</u> This rationale is in keeping with the undisturbed precedent of this Court in <u>Hoover</u>, as well as the many Federal Circuit Courts that have ruled that cross-examination on the specifics

of plea agreements must be allowed. <u>See</u> <u>United States v. Dimora</u>, 843 F. Supp. 2d 799, 842-43 (N.D. Ohio 2012) (noting a circuit split on this issue).

<u>Dimora</u> and <u>Gracely</u> were recently discussed by the District Court of South Carolina in its decision on the very same issue in <u>U.S. v. Cannon</u>, 2012 WL 6568410 (D.S.C. 2012). In <u>Cannon</u>, which was argued by the same Assistant United States Attorney as this case, the District Court adopted the argument of the Government, which is purported to rest on well-settled law in the Fourth Circuit as laid out in <u>Cropp</u>. Just like the motion filed in this case, the decision in <u>Cannon</u> makes absolutely no mention of <u>Hoover</u>, though, and it is unclear whether this contrary opinion was ever considered.

The District Court in <u>Cannon</u> decided to grant the Government's motion to exclude cross-examination on specific sentences for co-defendants and stated, "[t]he Cannons attempt to demonstrate that the minority view (three Circuits require cross-examination on specific sentences while four, counting the Fourth Circuit, do not allow it) is gaining ground by citing to <u>State v. Gracely</u>, 399 S.C. 363, 374-75 (2012), a recent South Carolina Supreme Court decision in which the court held: '[t]he fact that a cooperating witness avoided a *mandatory minimum* sentence is critical information that a defendant must be allowed to present to the jury.' (emphasis in original). Because the instant case is brought pursuant to violations of federal law, federal precedent applies. The South Carolina Supreme

15

Court's decision in <u>Gracely</u> is interesting but not controlling in this matter. Additionally, the court is not persuaded to ignore Fourth Circuit precedent on Defendant's argument that the circuit split mentioned above evidences a new emerging consensus regarding the extent to which a cooperating witness can be questioned about the sentence he received and the sentence he avoided in exchange for his cooperation. Given clear Fourth Circuit precedent in <u>Cropp</u>, which appears to reflect the majority view, and given the fact that the relevant facts of <u>Cropp</u> are similar to the facts in this case, the court is not persuaded by the Cannons' argument." <u>Cannon</u> at p. 3.

It should be noted that the 5-3 circuit split on this issue would instead be 4-4 if the mandate of <u>Hoover</u> that defense counsel be permitted to develop an understanding of exactly what concrete benefits a witness stands to receive from cooperating were honored in the Fourth Circuit. <u>See</u> <u>Dimora</u>, 843 F. Supp. 2d at 843 (noting that the Third, Fifth, and Ninth Circuits require cross-examination on specific sentencing while the First, Second, Fourth, Second, and Eighth Circuits do not).

In this case, counsel for Lipscombe was able to cross-examine the cooperating co-defendants about their desire to avoid "severe mandatory minimum sentences," but was not able to provide a concrete number for this to the jury. In

limiting the scope of cross-examination in this way, the District Court violated Lipscombe's right to confrontation as guaranteed by the Sixth Amendment.

## <u>CONCLUSION</u>

Based on the foregoing, Appellant prays that this Court hold that it is an abuse of discretion for a trial judge to disallow cross-examination of cooperating co-defendant on the issue of the specific mandatory minimum sentences that they have contracted with the Government to avoid.

This the 26th day of November, 2013.

Yastrzemski Lipscombe,
Appellant

<u>/s/  T. Micah Leddy</u>
T. Micah Leddy
The Leddy Law Firm, LLC
2008 Lincoln Street
Columbia, SC  29201
(803) 779-9966
Counsel for Appellant

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

## **CERTIFICATE OF COMPLIANCE WITH RULE 32(a)**

Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1.   This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

this brief contains 3,947 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.   This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

this brief has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

/s/  T. Micah Leddy
T. Micah Leddy
Attorney for Appellant

Dated:  November 26, 2013

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on November 26, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Andrew Burke Moorman, Esq
OFFICE OF THE
  UNITED STATES ATTORNEY
One Liberty Square
Suite 700
55 Beattie Place
Greenville, SC 29601

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ *Karen R. Taylor*
Karen R. Taylor
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street, Suite 230
Richmond, VA  23219